UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WENDALL HALL and TONNIE NEALY,

    Plaintiffs,

v.                              Case No.:  2:24-cv-338-SPC-NPM

JON CARNER, HOUSTON, SERINA WILLIAMS and SMART COMMUNICATIONS, LLC,

    Defendants.
_____/

## OPINION AND ORDER

Before the Court is Plaintiffs Wendall Hall and Tonnie Nealy's Amended Complaint (Doc. 10).  The plaintiffs are involuntarily committed residents of the Florida Civil Commitment Center (FCCC), and they are litigating this action *pro se* and *in forma pauperis*.  The Court dismissed the plaintiffs' original complaint because it was a shotgun pleading.  The Court now reviews the Amended Complaint to determine if it is frivolous or malicious, fails to state a claim, or seeks monetary relief from anyone immune from such relief.  *See* 28 U.S.C. § 1915(e)(2).

Hall and Nealy allege the defendants violated several of their federal rights by implementing a policy requiring FCCC staff to forward incoming resident mail to Smart Communications, which scans and destroys the mail

and provides FCCC residents access to digital copies on tablets. The plaintiffs filed a substantially similar action last year, and the Court dismissed it for failure to state a claim. But because the policy could violate an FCCC resident's rights to free speech and access to courts, the Court wrote, "If either plaintiff can plausibly allege the mail policy chilled his constitutionally protected speech with legal counsel, he may file a new action." Opinion and Order (Doc. 41), *Hall v. Carner*, No. 2:23-cv-595-SPC-NPM (M.D. Fla. Mar. 6, 2024).

Federal Rule of Civil Procedure 12(b)(6) provides the standard for screening complaints under § 1915. *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a court can draw a reasonable inference, based on facts pled, that the opposing party is liable for the alleged misconduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)). And a plaintiff must allege more than labels and conclusions amounting to a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

Hall and Nealy are representing themselves in this action. Courts hold the pleadings of *pro se* litigants to a less stringent standard than pleadings drafted by attorneys. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). But courts do not have a duty to "re-write" a *pro se* litigant's complaint to find a claim. *See Washington v. Dep't of Children & Families*, 256 F. App'x 326, 327 (11th Cir. 2007). And when plaintiffs litigate *in forma pauperis*, courts have "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (explaining that § 1915(e)(2) requires preliminary review "largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11").

When conducting preliminary review under § 1915, courts need not ignore a plaintiff's litigation history. "On the question of frivolousness, a litigant's history of bringing unmeritorious litigation can be considered." *Bilal v. Driver*, 251 F.3d 1346, 1350 (11th Cir. 2001). Hall has filed 50 civil actions in Florida federal courts, including this one and excluding habeas actions. Six are pending. Eight actions were dismissed because the court found them

3

frivolous, malicious, and/or an abuse of the judicial process. Seven more were dismissed for failure to state a claim.

While a prisoner, Hall became a three-strike litigant under 28 U.S.C. § 1915(g) around 2006. The Court counts 15 dismissals under the three-strike rule. Among those dismissals, three courts found that Hall lied under oath to make use of the imminent-risk exception. Judge Timothy Corrigan noted that Hall "has a history of filing abusive litigation and lying under penalty of perjury." Order of Dismissal Without Prejudice (Doc. 20 at 3), *Hall v. Watson*, No. 3:14-cv-176-TJC-MCR, (M.D. Fla. July 16, 2014). Earlier this year, Judge Brian Davis found that Hall filed fraudulent exhibits, though he withdrew them when the defendant pointed out signs of tampering. Order (Doc. 307), *Hall v. Watson*, No. 3:15-cv-1054-BJD-PDB (M.D. Fla. May 20, 2024).

Unlike Hall, Nealy does not have an extensive history of abusing the judicial process. But in a recent order, Judge John Steele questioned the authenticity of certain exhibits Nealy submitted to oppose summary judgment. The exhibits purported to be resident communication forms Nealy sent to the defendants, but they appeared to be written in Hall's handwriting, and the spaces for FCCC staff to mark them as received were blank. Opinion and Order (Doc. 42), *Nealy v. Masters*, No. 2:23-cv-123-JES-KCD (M.D. Fla. Sept. 4, 2024).

Hall has a history of frivolous litigation, lying to courts under oath, and otherwise abusing the judicial process. The Court keeps that history in mind

when evaluating the Amended Complaint for frivolity and maliciousness. *See Bilal,* 251 F.3d at 1350 ("The district court was all too familiar with the Plaintiff's repetitive and trifling litigation tactics, which were again apparent in this case.").

The Amended Complaint begins with a "Statement of Claims," which lists 18 often conclusory and duplicative "counts." Most are materially indistinguishable from the claims the Court dismissed in the plaintiffs' prior action. In the Eleventh Circuit, "a plaintiff's duplicative complaint is an abuse of the judicial process and is properly dismissed without prejudice as malicious under" § 1915(e)(2). *Daker v. Ward,* 999 F.3d 1300, 1308 (11th Cir. 2021). The Court will not address each of the conclusory and duplicative "counts," but the Court has considered the factual allegations in the "Statement of Claims" and the "Introduction" section that follows it. The plaintiffs' claims begin in earnest on page 9 of the Amended Complaint. The Court will address them in the order they are pled.

**A. First Amendment**

In the plaintiffs' prior action, they alleged the mail policy requires FCCC staff to send all incoming mail—including legal mail—to Smart Communications for scanning. That is also how they characterize the policy later in the Amended Complaint. But in this count, the plaintiffs claim the policy requires FCCC staff to scan legal mail themselves. Both plaintiffs allege

5

FCCC staff directed the plaintiffs to open their legal mail, then staff scanned the mail onto a computer, provided the plaintiffs a copy, and shredded the original. This new characterization of the policy closely mirrors the facts of a case the plaintiffs cite repeatedly, *Christmas v. Nabors*, 76 F.4th 1320 (11th Cir. 2023), in which the Eleventh Circuit found the plaintiff stated a plausible First Amendment claim. The change in the plaintiffs' story—and its inconsistency within the Amended Complaint—raises questions about whether they are litigating in good faith. But it does not change the Court's analysis if FCCC staff scanned the mail rather than Smart Communications.

As the Court explained in the order dismissing Case No. 23-cv-595, the mail policy generally satisfies the modified *Turner*[1] standard that applies to FCCC policies. The exception is properly marked attorney mail. Based on the Eleventh Circuit's analysis in *Al-Amin v. Smith*, 511 F.3d 1317 (11th Cir. 2008), the Court found that opening a FCCC resident's properly marked attorney mail outside his presence and scanning it to a computer unlawfully violates the resident's right to free speech and can violate his right to access to courts. The Court nonetheless dismissed the claim and made it clear that to succeed, a plaintiff would need to allege that a correspondence with current or

---

[1] *Turner v. Safley*, 482 U.S. 78 (1987).

prospective legal counsel was opened outside their presence or scanned to a computer.

The case the plaintiffs cite repeatedly as the legal basis for their claim also highlights that point. In *Christmas v. Nabors*, the Eleventh Circuit found a similar mail policy unconstitutional because it "could chill, inhibit, or interfere with a prisoner's ability to speak, protest, and complain openly *to his attorney* so as to infringe his right to free speech." 76 F.4th at 1329 (emphasis added). Despite clear notice on the type of conduct that would violate the plaintiffs' rights in this context, Hall and Nealy again stop short of alleging any correspondence with current or prospective legal counsel. It makes sense given the plaintiffs' histories. Both men—especially Hall—frequently file lawsuits in this Court, and they always file *pro se*. The plaintiffs have not alleged they engage in the type of speech at issue in *Al-Amin* and *Christmas*—i.e., confidential correspondence with an attorney. To be clear, not all legal mail is confidential. The orders this Court sends the plaintiffs, for example, are publicly available. The plaintiffs' First Amendment claim thus fails for the same reason it failed in the prior action.

### B. Postage Stamps

The plaintiffs also allege the new FCCC mail policy prohibits them from receiving postage stamps through the mail. The FCCC commissary store sells stamps, but the plaintiffs claim they cannot afford them. As a result, the policy

7

allegedly chills the plaintiffs' First Amendment rights by inhibiting their ability to mail family, friends, attorneys, and courts. The plaintiffs assert they have no means of obtaining adequate amounts of postage stamps other than by receiving them in mail from friends, family, or attorneys. That assertion is implausible in light of the plaintiff's acknowledgement that stamps are available for purchase from the commissary. Presumably, the plaintiffs' friends and family can contribute money to their resident trust accounts, which can be used to purchase stamps. Indeed, both plaintiffs' resident account statements show they regularly receive deposits when the balance approaches zero. (*See* Doc. 2-1; Doc. 3-1).

The plaintiffs' litigation histories also seriously undermine their argument. The Court established an electronic filing program with the FCCC in August 2021. *See* Standing Order, *In re: Procedural Rules for the Electronic Filing Pilot Project at the Florida Civil Commitment Center*, No. 2:21-mc-22-SPC (M.D. Fla. Aug. 17, 2021). The program allows FCCC residents to file papers with a scanner the Court provided to the FCCC without the need for postage stamps. Hall has filed ten cases in this district since the program started. While he has occasionally used the scanner, he has mostly opted to file by mail. In some instances, Hall has filed documents electronically, then needlessly mailed duplicative copies. Nealy has never used the electronic filing program in the seven cases he filed since its inception. Given that the

8

plaintiffs' consistently use postage stamps when they do not need to, their claim that a shortage of stamps is limiting their ability to send mail is frivolous.

### C. Religious Letters

Hall accuses Defendants of violating his rights under the First Amendment and Religious Land Use and Institutionalized Persons Act (RLUIPA) because the mail policy prevents him from receiving monthly postcards from a religious organization. The RLUIPA provides greater protection than the First Amendment, so if a claim fails under the RLUIPA, it necessarily fails under the First Amendment. *Dorman v. Aronofsky*, 36 F.4th 1306, 1313 (11th Cir. 2022).

To state a claim under the RLUIPA, a plaintiff must plausibly allege "that a government rule, regulation, practice, or policy substantially burdens his exercise of religion." *Id.* The Eleventh Circuit has "held that a substantial burden is more than an inconvenience and is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly." *Id.* (cleaned up). For example, "a substantial burden can tend to force adherents to forego religious precepts or mandate religious conduct." *Id.* (cleaned up). Hall has not plausibly alleged that his inability to receive monthly postcards from a religious organization substantially burden's his exercise of religion. The Court will dismiss this claim.

### D. Equal Protection

In this claim, the plaintiffs allege they are not allowed to receive postcards through the mail, while pretrial detainees at the DeSoto County Jail are allowed to receive postcards. The plaintiffs argue that they are similarly situated to the pretrial detainees, so the FCCC's prohibition of postcards violates the Equal Protection Clause of the Fourteenth Amendment. To plead an Equal Protection claim, a plaintiff must allege (1) he is similarly situated to others who received more favorable treatment and "(2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318-19 (11th Cir. 2006).

The plaintiffs have not stated a plausible Equal Protection claim. First, they are not similarly situated to pretrial detainees in DeSoto County Jail. To be "similarly situated" for Equal Protection purposes, comparators must be "prima facie identical in all relevant respects." *Grider v. Cty. of Auburn, Ala.*, 618 F.3d 1240, 1264 (11th Cir. 2010). Hall and Nealy are civilly committed to the FCCC because a Florida court determined they are "'sexually violent predator[s]' likely to engage in future 'acts of sexual violence for long-term control, care, and treatment.'" *Pesci v. Budz*, 935 F.3d 1159, 1162 (11th Cir. 2019) (quoting Fla. Stat. §§ 394.912(10)(b); 394.915). Pretrial detainees, on the other hand, are confined "to ensure their presence at trial." *See Magluta v.*

10

*Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004). The plaintiffs are not prima facie identical to pretrial detainees awaiting trial in DeSoto County Jail.

The plaintiffs also fail to satisfy the second element of an Equal Protection claim because they do not allege the defendants discriminated against them based on a protected status. The Court will dismiss this claim.

### E. Illegal Search and Seizure

The next section of the plaintiff's Amended Complaint focuses on Smart Communication. The plaintiffs argue Smart Communication's role in the mail policy—to receive mail from the FCCC, scan it into a computer, and shred it—is an illegal search and seizure and an unlawful deprivation of the plaintiffs' property. But the plaintiffs have no reasonable expectation to trigger Fourth Amendment protections here.

The Supreme Court has held, "A right to privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984). The *Hudson* Court acknowledged that administration of a prison is "extraordinarily difficult," and that it would be "literally impossible" to accomplish a prison's objectives if inmates retained a right of privacy in their cells. *Id.* at 527. That reasoning extends to their personal effects, including

incoming mail. *Robinson v. Penn. Dep't of Corr.*, 851 F. App'x 289, 293 (3rd Cir. 2021).

While not prisoners, Hall and Nealy are involuntarily confined to a secure facility because they were found to be sexually violent predators. The same concerns raised in *Hudson* apply here. See *Pesci,* 730 F.3d 1299 (comparing the FCCC to prison and recognizing that FCCC officials are better equipped than the courts to operate the facility). Hall and Nealy thus do not have a reasonable expectation of privacy in their personal effects—including incoming mail—to trigger Fourth Amendment protections.

That is not to say the Constitution offers FCCC residents no protections against intrusive mail policies. FCCC residents maintain their First Amendment rights, and the FCCC's mail policies must satisfy the modified *Turner* standard discussed above and in the Court's order dismissing the plaintiffs' previous action.

**F. Access to the Courts**

The next section of the Amended Complaint is headed, "Additional Harms of Carners Electronic Mail Policy." The allegations in this section mostly reiterate claims addressed above. An exception is the plaintiffs' claim that the mail policy hinders their ability to pursue legal claims because some courts require parties to file original documents or signatures.

12

The plaintiffs do not state a plausible access-to-courts claim. First, the plaintiffs do not allege any restrictions to outgoing mail that would prevent them from sending documents with their original signature to courts. Second, neither plaintiff alleges any actual injury, a necessary element for an access-to-courts claim. *See Lewis v. Casey*, 518 U.S. 343, 349 (11th Cir. 1996). To establish actual injury in this context, a plaintiff must allege the defendants "have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action." *Al-Amin*, 511 F.3d 1332 (citation omitted). The plaintiffs do not allege any defendant prevented them from filing an original document with a court, nor do they identify any nonfrivolous legal claim impeded by any aspect of the mail policy. The Court will dismiss this claim.

**G. Retaliation**

Finally, Hall claims Carner told him in June 2023 that he ordered FCCC staff and Smart Communication to destroy Hall's legal mail without providing Hall a copy to retaliate against him for filing lawsuits. Hall further claims Carner's retaliatory act caused "him not to receive any legal mail documents, including court orders." (Doc. 10 at 18). Hall's allegation is not plausible. First, it directly contradicts paragraph 20 of the Amended Complaint, which alleges, "From 2023 and ongoingly…FCCC staff provided plaintiffs Hall and Nealy with copies of their legal mail." (*Id.* at 9). Second, court records refute Hall's allegation. Hall had six pending cases in this district on June 1, 2023.

13

He has since filed five more. The records of those cases show that Hall received the Court's orders. He responded to orders to show cause, objected to orders from magistrate judges, and generally met deadlines set by court orders. None of the actions have been dismissed because Hall missed a deadline. Because the allegations underlying this claim are demonstrably false, the Court will dismiss it as frivolous and malicious.

### H. Conclusion

Wendall Hall's penchant for abusing the judicial process is on display again here. The inconsistent and demonstrably false allegations peppered throughout the Amended Complaint demonstrate that the plaintiffs did not bring this suit in good faith. As the Court observed in its order dismissing the plaintiffs' prior action, the FCCC's electronic mail policy could violate a residents' right to communicate privately with counsel. But the plaintiffs do not allege they have corresponded with current or prospective counsel since the policy was implemented. The Amended Complaint is thus deficient for the same reason the Court dismissed Case No. 2:23-cv-595.

The Court will dismiss this action without prejudice. If a defendant or another FCCC official opens clearly marked attorney mail addressed to Hall or Nealy outside their presence, or scans such mail to a computer or other device, that plaintiff may file a new action. But if the plaintiffs continue to flood this Court with false and frivolous claims, the Court will consider sanctions.

Accordingly, it is now

**ORDERED:**

Plaintiffs Wendall Hall and Tonnie Nealy's Amended Complaint (Doc. 10) is **DISMISSED without prejudice**. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment dismissing this action without prejudice, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on October 2, 2024.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies: All Parties of Record